IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEYONTAE CORNAIL STINSON,

                Plaintiff,

v.                                              OPINION and ORDER

EDWARD ROTHBAUER and                20-cv-762-jdp
JUSTIN RIBAULT,

                Defendants.

---

Pro se plaintiff Deyontae Cornail Stinson is proceeding on medical care claims against two Columbia Correctional Institution healthcare providers. Stinson says that defendant Edward Rothbauer injured him during a physical therapy session, which violated both the Eighth Amendment and state negligence law. Stinson also contends that defendant Justin Ribault negligently prescribed Stinson pain medications despite unsafe contraindications.

Defendants move for summary judgment on Stinson's claims. Dkt. 56. I conclude that a reasonable jury could find that Rothbauer acted with conscious disregard to Stinson's medical needs by allowing Stinson to leave the physical therapy session with burn wounds without telling Stinson about his injuries. But for the reasons explained in this opinion, Stinson has failed to submit sufficient evidence that Rothbauer or Ribault acted negligently toward Stinson. The case will go to trial on Stinson's claim under the Eighth Amendment against Rothbauer, and I will dismiss Stinson's state-law medical negligence claims and Ribault.

Defendants have asked the court to stay the pretrial submission deadlines and keep discovery open for the purpose of deposing Stinson. Dkt. 68. I will grant the motion and extend the deadlines. Because of a scheduling conflict, the final pretrial conference will be moved to an earlier date. The trial remains scheduled for August 29, 2022.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Deyontae Cornail Stinson is incarcerated at Columbia Correctional Institution (CCI). At all times relevant to this case, Edward Rothbauer was a physical therapist at the prison and defendant Justin Ribault was a physician at the prison.

Stinson had previously torn his meniscus and the injury was surgically repaired, but Stinson's knee continued to bother him. Ribault referred Stinson to physical therapy for chronic right knee pain. On January 18, 2020, Rothbauer saw Stinson for a physical therapy evaluation.

At the evaluation, Stinson complained of pain in his right knee, lower back, and both legs. He rated his pain as 8 to 10 out of 10 on a pain scale. When Rothbauer examined Stinson, the results were largely unremarkable. Stinson's knee showed no joint laxity, had normal strength and sensory responses, equal if not better range of motion than his non-injured knee, and modest hamstring tightness. When Rothbauer examined Stinson's back, he found normal joint mobility but mild "guarding" in one area. Rothbauer noted that the high levels of pain that Stinson reported would typically affect a person's movement and gait, but Stinson walked normally before and after the appointment.

Rothbauer concluded that Stinson's knee and back pain were likely related and that physical therapy could reduce Stinson's pain. He decided to apply electric stimulation to Stinson's lower back using a transcutaneous electrical nerve stimulation (TENS) unit, which treats pain by delivering an electrical current through the skin to stimulate nervous tissue.

Rothbauer used a TENS unit with an amplitude range of 1–100 milliampere (mA). The proper amplitude for a particular patient is based on the patient's sensations during the

treatment. Light stimulation feels like "bugs crawling on the skin," which intensifies with increased amplitude. Higher amplitudes can produce muscle contractions that also become more intense as amplitude is increased.

Rothbauer placed four electrodes on Stinson's lower back. He noticed mild dry skin but nothing else that was abnormal. The parties offer different versions of what happened during the treatment. Defendants say that Stinson reported feeling a moderate stimulation sensation at 20 mA and that Rothbauer maintained that amplitude for the remainder of the treatment, about 20 minutes. Defendants say that the only thing Stinson said during the treatment was that it felt "nice, like a little massage." Dkt. 60, ¶ 19. Defendants also say that at the end of the treatment, Rothbauer removed the electrodes, looked at Stinson's back, and saw nothing concerning.

Stinson offers a different version of events. He says that after the first five minutes of the treatment, Rothbauer increased the amplitude on the TENS unit. He says that during the treatment, Rothbauer asked how Stinson was feeling and Stinson replied that he felt "burning and tingling and pulling on [his] muscles." Dkt. 1, at 4.[1] He also says that Rothbauer said that meant the treatment was working. Stinson says that after the treatment, Rothbauer removed the electrodes, saw burns left by the device, but pulled Stinson's shirt down over them and sent him back to his unit without telling him that he had been burned.

Stinson says that about an hour later, he took a shower and felt burning on his back. He complained to security staff, who looked at his back and called HSU. Bodycam footage

---

[1] Stinson responds to defendants' proposed findings of fact with citations to his verified complaint. This is sufficient for the purposes of Federal Rule of Civil Procedure 56(e). *Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996) (facts in verified complaints declared true under penalty of perjury are treated the same as facts in an affidavit).

from a correctional officer shows blisters and open wounds in four corners forming a square on Stinson's back. Dkt. 61-1. It is undisputed that the wounds were in the general location of the electrodes that had been used on Stinson's back. Defendants say that Stinson caused his wounds by scratching off his skin in the shower. Stinson denies this.

Stinson also suffers from a high blood pressure condition. Stinson is prescribed two blood pressure medications, hydrochlorothiazide (HCTZ) and amlodipine. His amlodipine was a "keep-on-person" prescription, which meant that he could keep the medication and his cell and take it at the directed times. His HCTZ was a "controlled" prescription, which meant that security staff gave him the medication at directed times. Stinson did not consistently comply with directions to take his blood pressure medications, and routinely refused his HCTZ throughout January 2020.

When Stinson was injured after his physical therapy session, Ribault prescribed him ibuprofen as needed from January 18 to January 25. He also prescribed topical lidocaine cream on January 21 for generalized musculoskeletal pain, including back pain. In the days after his injury, Stinson's blood pressure increased. Stinson was not able to use the lidocaine cream because of his wounds. The court will discuss additional facts in the analysis below.

ANALYSIS

I granted Stinson leave to proceed on the following claims: (1) Rothbauer violated Stinson's Eighth Amendment rights by burning Stinson with a TENS unit and allowing him to leave the appointment without telling Stinson about the burns; (2) Rothbauer acted negligently by burning Stinson with the TENS unit and disregarding his knee injury; and (3) Ribault acted

negligently by prescribing Stinson ibuprofen despite Stinson's high blood pressure, and lidocaine cream despite Stinson's injuries from the TENS unit.

Defendants move for summary judgment on all of Stinson's claims, contending that he cannot show that defendants acted with conscious disregard or negligence in treating him. Defendants also contend that Rothbauer is entitled to qualified immunity. Summary judgment is appropriate if defendants show that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To avoid summary judgment, Stinson must set forth specific facts supported by admissible evidence that create a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## A. Defendant Rothbauer

### 1. Eighth Amendment claim

The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

The parties do not dispute that Stinson's wounds constituted a serious medical need, and the evidence supports the conclusion that they did. The bodycam video clearly shows that Stinson had multiple blisters and open wounds on four areas of his back. The medical records show that he received daily wound care in the days following his physical therapy session, including cleansing, antibiotic ointment, and dressings. Dkt. 59-1, at 11–17. Stinson also saw HSU providers about his wounds for at least two months. *Id*. Burn injuries requiring wound care are a serious medical condition for purposes of Eighth Amendment medical care claims. *Rivera v. Gupta*, 836 F.3d 839, 842 (7th Cir. 2016).

Defendants contend that Stinson cannot show conscious disregard of his health and safety for two reasons. First, defendants say that the TENS unit did not cause Stinson's wounds. They cite Rothbauer's declaration testimony that Stinson said that his back felt itchy in the shower and he scratched his own skin off. Dkt. 60, ¶ 24. Defendants also say that the electrodes were not moved during Stinson's treatment, but he had side-by-side lesions in two areas of his back that were "far enough apart that they would questionably fit within the margins of an electrode." Dkt. 57, at 9. But Stinson disputes defendants' position. He testified that his back began to burn in the shower less than an hour after the treatment, and that when he wiped his back with a washcloth, blood and skin came off. Dkt. 1, at 5. His testimony is consistent with the video evidence, in which Stinson tells correctional officers that he used bodywash in the shower and his back began to burn. Dkt. 61-1. The bodycam video shows

wounds or blisters at four points forming a square on Stinson's back, with side-by-side wounds only about an inch apart in two locations. Based on this evidence, a reasonable jury could find that the TENS unit injured Stinson.

Second, defendants contend that Rothbauer did not consciously disregard Stinson's injuries because he was not aware of the burns after the treatment. Stinson was not in pain and did not look at his back immediately after the treatment. Rothbauer testified in his declaration that he looked at Stinson's back after removing the electrodes and did not see skin any irritation or discoloration. Dkt. 60, ¶ 20.

Stinson contends that Rothbauer removed the electrodes, saw the wounds, and pulled Stinson's shirt down over them. saw. Defendants argue that Stinson cannot show that Rothbauer knew about the burns because Stinson lacks personal knowledge of what Rothbauer saw. But that is not correct. Dkt. 67, ¶ 39 and Dkt. 57, at 13. The bodycam video shows highly defined wounds present within an hour of Stinson's physical therapy session. This supports the reasonable inference that Stinson's wounds were also visible at the end of his treatment, and that Rothbauer had to have seen them when he removed the electrodes. So there is a genuine dispute of material fact whether Rothbauer saw the wounds at the end of the TENS unit treatment. And if Stinson's version of the facts is accepted, a reasonable jury could find that Rothbauer acted with conscious disregard by failing to treat or tell Stinson about his injuries before sending him back to his unit.

Defendants contend that Rothbauer is entitled to qualified immunity because he did not violate clearly established law. But in cases like this one involving a straightforward application of the test for conscious disregard, the court of appeals has been reluctant to find that qualified immunity should apply. *E.g., Estate of Clark v. Walker*, 865 F.3d 544, 552–53 (7th

Cir. 2017); *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 991 (7th Cir. 2012); *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). This is because the merits and qualified immunity analyses may effectively collapse into one, and if there are genuine issues of fact concerning the elements of an Eighth Amendment claim, a defendant may not avoid trial on the basis of qualified immunity. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). It is well-established that medical professionals must treat serious medical problems, not conceal them. A reasonable jury could find that Rothbauer didn't comply with those requirements, so I will deny defendants' summary judgment motion on Stinson's Eighth Amendment claim against Rothbauer.

### 2. Medical negligence claims

I granted Stinson leave to proceed on state-law medical negligence claims against Rothbauer for: (1) burning Stinson with the TENS unit, and (2) disregarding Stinson's knee injury at the January 18 physical therapy session. Stinson discusses Rothbauer's failure to treat and notify Stinson about his burn in his opposition brief. Dkt. 63, at 11. But I did not grant Stinson leave to proceed on a medical malpractice claim on that basis, Dkt. 28, and Stinson did not request reconsideration of that decision or move to amend his complaint to add that claim. So Stinson's medical malpractice claims against Rothbauer will be limited to the TENS unit burns and Stinson's knee injury. In any event, a medical negligence claim based on Rothbauer's intentional failure to treat or tell Stinson about his burns would add little to Stinson's lawsuit, because he is already going to trial on this conduct under the Eighth Amendment.

Under Wisconsin law, a claim for medical malpractice, like a claim for negligence, requires four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or

8

damages. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. The general rule is that expert testimony is required to establish the standard of care in a medical negligence case. *Gil v. Reed*, 535 F.3d 551, 557–58 (7th Cir. 2008). But there is an exception to that rule when common knowledge would allow a jury to find negligence. *Jones v. Edge*, No. 16-cv-848-jdp, 2018 WL 2301846, at *4 (W.D. Wis. May 21, 2018); *Gil v. Reed*, 535 F.3d 551, 557–58 (7th Cir. 2008). Examples of cases not requiring expert testimony include situations when a providers leaves a foreign object inside a patient during surgery, operates on the wrong organ or body part, or ignores a patient's complaints about severe pain. *Hudson v. United States*, 636 F. Supp. 2d 827, 831 (W.D. Wis. 2009); *Holton v. Hamblin*, No. 11-cv-246-slc, 2013 WL 6525881, at *4 (W.D. Wis. Dec. 12, 2013).

Stinson contends that Rothbauer failed to exercise ordinary care by burning him with the TENS unit. He says that Rothbauer increased the amplitude of the TENS unit five minutes into the treatment, and that when Rothbauer checked in with Stinson several minutes later, Stinson told him that he felt "burning and tingling and pulling on [his] muscles." Dkt. 1, at 4. Defendants dispute that Stinson said he felt any discomfort. But the factual dispute does not matter. How to operate a TENS unit is not with in a jury's common knowledge. Without expert assistance, a reasonable jury would not know whether Rothbauer's use of the TENS unit fell below the standard of care for a reasonable physical therapist faced with Stinson's symptoms and statements during the treatment.

Stinson also contends that Rothbauer negligently ignored Stinson's knee injury by only treating Stinson's back at the January 18 physical therapy session. Rothbauer testified that he believed Stinson's knee and back pain were related, and that he could treat both problems by focusing on Stinson's back. Stinson's claim about the treatment of his knee injury also fails

9

without expert testimony. *See, e.g., Brown v. United States*, 74 F. App'x 611, 613 (7th Cir. 2003) (expert testimony is required to establish the standard of care for treating interrelated medical conditions); *Anderson v. Schroeder,* No. 16-c-1543, 2018 WL 3130644, at *7 (E.D. Wis. June 26, 2018) (expert testimony is required to establish the standard of care for treating chronic pain from past injuries). Without the assistance of medical expertise, a lay jury would not know whether Rothbauer's decision to treat Stinson's knee pain by focusing on Stinson's lower back satisfied the applicable standard of care. Stinson has failed produce to evidence that Rothbauer acted negligently in his treatment of Stinson, so defendants are entitled to summary judgment.

**B. Defendant Ribault**

I also granted Stinson leave to proceed on state-law medical negligence claims against Ribault for: (1) prescribing him ibuprofen despite Stinson's high blood pressure condition; and (2) prescribing Stinson pain relief cream that could not be used on open wounds.

Stinson's first claim fails for two reasons. First, Stinson's evidence is insufficient to support a finding of medical negligence. Stinson says that his blood pressure spiked after Ribault prescribed him ibuprofen from January 18 to January 25. But it is undisputed that Stinson was not regularly taking one of his blood pressure medications as directed at the relevant time. Stinson produces a prison grievance form in which an HSU manager stated that "ibuprofen can raise blood pressure but it was unlikely it harmed inmate Stinson." Dkt. 3-3. And Ribault testified that Stinson's blood pressure increased because he was non-compliant with his blood pressure medications, not because he took ibuprofen for a short period of time. Dkt. 59, ¶ 16. Second, "[w]hether a particular medication caused a particular symptom can be established only by expert testimony," and Stinson provides none. *Walker v. McArdle*,

10

No. 18-c-612, 2019 WL 3253928, at *6 (E.D. Wis. July 19, 2019). No reasonable jury could find, based on the evidence in the record, that Ribault negligently prescribed Stinson ibuprofen.

Stinson also contends that Rothbauer negligently prescribed him lidocaine cream that he could not use because of the wounds on his back. But Stinson does not contend that Ribault prescribed the cream for Stinson's wounds. Rather, Ribault stated in his declaration that he prescribed Stinson lidocaine cream for generalized musculoskeletal pain. Dkt. 59, ¶ 19. And Stinson does not say that he applied the cream to his wounds and suffered harm. Stinson's providers were otherwise managing his pain. Stinson received wound care for his burns and had prescriptions for other pain relievers, including Excedrin, Tylenol, and Voltaren gel, another topical pain cream. No reasonable jury could find that Ribault acted negligently by prescribing Stinson with lidocaine cream. I will grant summary judgment to defendants on Stinson's medical negligence claims against Ribault.

ORDER

IT IS ORDERED that:

1. Defendants Edward Rothbauer and Justin Ribault's motion for summary judgment, Dkt. 56, on Stinson's Eighth Amendment medical care claim against Rothbauer is DENIED. Defendants' motion for summary judgment on all other claims is GRANTED. Defendant Ribault is DISMISSED.

2. Defendants' motion to extend the case deadlines and keep discovery open is GRANTED. Motions in limine and all other pretrial submission will be due on July 29, 2022; responses will be due August 8. The final pretrial conference will be rescheduled for August 16 at 10:00 a.m.

Entered July 8, 2022.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge